### In re the ESTATE OF Eugene BERRY.

### No. 05–08–00498–CV.

Court of Appeals of Texas, Dallas.

Feb. 23, 2009.

---

Douglas Edward Lattanzio, Jameson & Dunagan, P.C., Dallas, for Appellant.

Robert F. Maris, Maris & Lanier, P.C., John J. Little, Little, Pederson & Frankhouser, L.L.P., Dallas, for Appellee.

Before Justices BRIDGES, RICHTER, and MAZZANT.

## OPINION

Opinion by Justice BRIDGES.

Sue Berry appeals the trial court's summary judgment in favor of Comerica Bank on her claims of wrongful payment of certain checks. In a single point of error, Berry argues fact issues exist as to whether she complied with section 4.406 of the business and commerce code. We affirm the trial court's judgment.

Sue Berry and Eugene Berry were married from June 1987 until Eugene's death on July 4, 2004. Sue and Eugene maintained an investment account at H & R Block. In August 2004, Sue reviewed her finances and requested statements from H & R Block because she could not find the account statements that had originally been sent to the Berry's residence. The filing cabinet where Eugene had kept financial information was empty. H & R Block provided copies of statements addressed to Eugene Berry and Sue Fischer Berry at their correct residential address. All of the statements contained the name and phone number of the Berry's account representative at H & R Block. Sue did not know if the statements had been delivered originally because she had not seen them come to the residence. Sue worked during the day, and Eugene always got the mail and received, opened, and stored all of the statements from H & R Block. After reviewing the statements, Sue was concerned that the balance was far less than the "amount of money that I believed had seeded the account" and she discovered her signature had been forged on several checks. Sue reported the forgeries to H & R Block "on or about November 2004."

In September 2005, Sue filed suit against Comerica, H & R Block, Washington Mutual Bank, and Elizabeth Barry Carruth, individually and as independent executrix of the estate of Eugene Berry. Sue alleged the wrongful payment of seven forged checks totaling $79,089.32. Comerica filed a motion for summary judgment contending Sue's claims against Comerica were barred because she did not report the unauthorized signatures within one year after the statement or items were made available, as required by section 4.406(f) of the business and commerce code. Sue filed a response in which she argued she was not a Comerica customer and she did report the forgeries to H & R Block within one year of receiving the

statements. The trial court granted summary judgment in favor of Comerica. All other claims were dismissed without prejudice, rendering the summary judgment final. This appeal followed.

In a single issue, Sue argues the trial court erred in granting summary judgment in favor of Comerica. Specifically, Sue argues Comerica did not ever provide statements to her. Instead, she contends she was H & R Block's customer, and she notified H & R Block of the forgeries within a year as required by section 4.406(f). Berry argues fact issues exist regarding when she received the statements from H & R Block and whether filing suit in September 2005 was sufficient notice to Comerica under section 4.406(f).

The standard of review for a summary judgment is well established: (i) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to summary judgment as a matter of law; (ii) in deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (iii) every inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment must show that the plaintiff has no cause of action by either disproving at least one essential element of each theory of recovery or conclusively proving all elements of an affirmative defense. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990).

■ Whether section 4.406 applies is a conclusion of law, which we review de novo. *American Airlines Employees Fed. Credit Union v. Martin*, 29 S.W.3d 86, 91 (Tex.2000). Bank customers have a duty to discover and report unauthorized signatures on their accounts. *See* TEX. BUS. & COM.CODE ANN. § 4.406 (Vernon 2002). Under section 4.406(a), a bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available the items paid or provide information in the statement sufficient to allow the customer to identify the items paid. *See id.* § 4.406(a). If a bank sends or makes available a statement of account under section 4.406(a), the customer must exercise reasonable promptness in examining the statement to determine whether any payment was not authorized because of alteration or an unauthorized signature. *See id.* § 4.406(c). If, based on the statement, the customer should reasonably have discovered the unauthorized payment, he must promptly notify the bank of the relevant facts. *Id.* Without regard to the care or lack of care of either the customer or the bank, a customer who does not discover and report the unauthorized signature within one year after the statement or items are made available is precluded from asserting the unauthorized signature. *Id.* § 4.406(f).

■ Here, the record shows the fraudulent checks were dated between February 14, 2003 and March 4, 2004. H & R Block delivered statements showing the checks to Sue's address within one week of the ending date of each of the statements. The statements were addressed to Sue and Eugene, and Sue confirmed they were properly addressed, though Sue said she did not see the statements when they were originally delivered. Nevertheless, in Sue's response to interrogatories, she admits she received the H & R Block statements for the period of January 2003 to July 2004 in July 2004. All of the fraudulent checks appear on the statements from this time period. Thus, at the latest, Sue

had statements showing the fraudulent checks in July 2004, whether or not she ever saw the statements when they were originally delivered. Even assuming her suit filed in September 2005 would have constituted a report to Comerica of the fraudulent checks, such report came more than a year after the statements were made available to Sue. As a result, without regard to the care or lack of care of either Sue or Comerica, she is now precluded as a matter of law from asserting the unauthorized signatures. *See id.* § 4.406(f). Accordingly, the trial court did not err in granting Comerica's motion for summary judgment. *See Nixon,* 690 S.W.2d at 548–49. We overrule Sue's single issue.

We affirm the trial court's judgment.