AFFIRM; and Opinion filed February 25, 2013.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-11-00558-CV

## U.S. RISK INSURANCE GROUP, INC. AND U.S. RISK, INC., Appellants

## V.

## BRETT WOODS, Appellee

### On Appeal from the 192nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 09-04069-K

# OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion By Justice O'Neill

U.S. Risk Insurance Group, Inc. (USRIG) and U.S. Risk, Inc. (USR) (collectively appellants) appeal the trial court's judgment granting summary judgment on its breach of contract claim in favor of Brett Woods. In three issues, appellants contend generally that the trial court erred in granting Woods's motion for summary judgment and in denying their motion for summary judgment. We overrule appellants' issues and affirm the trial court's judgment.

### Background

Woods began working for USR in 1996 as a senior broker. On January 1, 2003, Woods signed an Employment, Confidentiality, and Non-Compete Agreement (Agreement). The Agreement states that it is between the company, U.S. Risk Insurance Group, Inc., and the employee,

Brett M. Woods. USRIG is a holding company that does not engage in the business of insurance. It owns subsidiaries such as USR that do engage in the business of insurance. USRIG does not have any insureds of its own. Woods's employer did not change at the time he signed the Agreement or at anytime thereafter. USRIG paid Woods to work as the Branch Manager for U.S. Risk Brokers, Inc., an assumed name of USR.

Woods resigned his position with USR on March 25, 2009. One of two provisions of the Agreement came into play when Woods resigned. First, assuming Woods resigned for good reason, the Agreement prohibited Woods, for a period of one year, from soliciting insureds for whom he had written policies on behalf of USRIG. Second, assuming Woods voluntarily resigned without good reason, the Agreement prohibited him from working in the industry for a period of ninety days as long as USRIG elected to continue to pay him. The Agreement defines good reason to include a material reduction in pay.

In 2008, Aon, one of Woods's long-time clients, reduced the number of its brokers. Aon did not choose USR to continue as one of its authorized wholesale brokers and Woods lost the ability to place business through Aon. Woods testified that Aon represented about twenty percent of his income. Prior to resigning, Woods determined that the decrease in his aggregate compensation as a result of the loss of Aon's business would exceed ten percent and, thus, his resignation would be for good reason.

Soon after Woods resigned, he went to work for Westrope & Associates. Westrope and USR are competitors. In his letter of resignation, Woods asserted that he was resigning for good reason. In response, Richard Schwartz, USR's general counsel, informed Woods that he did not meet the requirements for resigning for good reason.

USRIG sought a temporary restraining order against Woods and Westrope. The trial court denied its application. Following Woods's plea in abatement showing that USRIG lacked the capacity to maintain suit in Texas because it was not registered to do business in this State, USR joined the lawsuit claiming that it was Woods's employer, not USRIG. The trial court subsequently denied appellants' request for a temporary injunction.

The parties filed competing motions for partial summary judgment on the breach of contract claim relating to the above-mentioned two provisions. The trial court granted Woods's motion and denied appellants' motion. The parties proceeded to trial on the remaining claims. At the time appellants rested their case, the only claim remaining was unjust enrichment against Woods. The jury returned a verdict in favor of Woods. The trial court rendered final judgment and this appeal timely followed. The only issues in this appeal involve the breach of contract claims disposed of through summary judgment.

## Standard of Review

The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 549; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*

*of America*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

## Woods's Motion for Summary Judgment

In its first and second issues, appellants contend the trial court erred in granting summary judgment for Woods. Specifically, appellants contend the trial court erred in agreeing with Woods's interpretation of the Agreement and in finding that Woods' conduct did not constitute a breach of the Agreement.

The construction of an unambiguous written contract is a question of law for the court. *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex.2006). When construing a contract, we must ascertain the true intentions of the parties as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333-34 (Tex.2011). In identifying the intention of the parties, we examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex.2005). If, after the rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). When summary judgment is sought in a case involving breach of contract, if neither party contends that the contract is ambiguous, then the contract's construction is a question of law. *See Richardson Lifestyle Ass'n v. Houston*, 853 S.W.2d 796, 800 (Tex. App.—Dallas 1993, pet. denied).

The first question to be determined is whether the nonsolicitation provision in section 10(a) or the noncompete provision in section 10(b) controls. This determination depends upon whether Woods resigned for good reason or voluntarily resigned without good reason. Appellants contend Woods did not resign for good reason and, therefore, was bound by the voluntary termination

provision in section 10(b) of the Agreement. By contrast, Woods contends he resigned for good reason and, therefore, the involuntary termination provision in section 10(a) controls.

The nonsolicitation provision (section 10(a)) in the Agreement provides:

*Involuntary Termination.* During the term of Employee's employment and for a period of twelve (12) calendar months after an involuntary termination of employment from the Company (for any reason) or Resignation for Good Reason (as defined in Sub-Paragraph 4(c)), Employee will not, directly or indirectly, either as principal, agent, manager, employee, partner, shareholder, director, officer, consultant or otherwise solicit, attempt to solicit, or accept the business or patronage of any Insureds for whom Employee has written contracts/policies on behalf of Company during a period of twelve (12) calendar months preceding the date of termination or otherwise induce such Insureds to reduce, terminate, restrict or otherwise alter their business relationships with the Company in any fashion; . . .

The Agreement defines "Good Reason" as follows:

. . . resignation resulting from: (i) Employee being required to relocate from Dallas, Texas; (ii) any involuntary, on the part of the Employee, substantial or sustained dimunition in the Employee's authority or responsibilities as an employee of the Company; (iii) any involuntary, on the part of the Employee, Material Reduction (defined in this Sub-Paragraph) in the compensation or commission schedule of Employee in the aggregate, but not including any reduction in the bonus paid to employee; or, (iv) Employee being requested by an executive officer or director of the Company to engage in any conduct or activities known by such executive officer or director of the Company to be illegal, unethical or immoral. For the purposes of this sub-paragraph, "Material Reduction" means a decrease greater than ten percent (10%) in Employee's compensation or commission schedule in the aggregate, exclusive of bonus, as measured between the then-current term and the subsequent successor term.

The noncompetition provision (section 10(b)) in the Agreement provides:

*Voluntary Termination.* During the term of Employee's employment and for a period of twelve (12) calendar months after a voluntary resignation from the Company without good reason, Employee shall be bound by the restrictions set forth in Paragraph 10(a) above. Additionally, for a period of ninety (90) days after the last day of Employee's employment following Employee's voluntary resignation from the Company provided that the Company elects to continue the Employee's salary during the ninety (90) day period, Employee agrees that Employee shall not become

associated with, employed by, or financially interested in any business operation which competes in the business currently engaged in by the Company or any of its subsidiaries or affiliates. The phrase "business currently engaged in by the Company" includes, but is not limited to, the types of activities in which the Company was engaged during Employee's tenure, such as the performance of whole-sale-brokerage and managing-general-agent services.

In his response to appellants' motion for partial summary judgment, Woods argued section 10(b) does not apply because he resigned for good reason. In his resignation letter, Woods stated that he was resigning for good reason. In his deposition testimony, Woods explained that he was going to have a greater than ten percent reduction in his pay from the then current term and the subsequent successor term.

In appellants' motion for partial summary judgment, they assert that Woods admitted that he did not resign for good reason. They cite to Woods's deposition testimony as support for this statement. At his deposition, Woods testified that the loss of Aon's business would result in approximately a twenty percent reduction in his income in the succeeding term of 2010. Woods testified that "material reduction means a decrease greater than ten percent of the employee's compensation or commission schedule in the aggregate, as measured by the then current term, which would be '09, and the subsequent successor term, which, I think, means 2010, and there's no doubt in my mind that as of 2010, I was going to suffer a loss of compensation greater than ten percent, hence my determination." Woods explained also that his base salary in 2010 would be reduced because it is based upon a broker's production for the last fiscal year. Income he brings into the firm in 2009 dictates his 2010 base salary. We have reviewed the deposition testimony relied upon and have determined that Woods did not admit that he resigned without good reason.

In his letter informing Woods that he did not meet the grounds for resignation with good reason, Schwartz stated that Woods's "base salary was reduced in 2009 by $10,000, which is only

3.14% of [his] total base salary." Schwartz did not factor in the subsequent term as is required under the Agreement. Rather, he considered only the *previous* and current terms. From our review of the record, Woods's deposition testimony appears to be the only evidence regarding good reason as it relates to the current and *subsequent* terms. We conclude the undisputed evidence shows that Woods resigned his position with USR for good reason and, thus, section 10(b) of the Agreement is inapplicable.

Even assuming that section 10(b) was applicable, Woods sought summary judgment on the claim of breach of this non-competition provision on the ground that it was unenforceable as an industry-wide bar.

A covenant not to compete is a restraint of trade and unenforceable as a matter of public policy unless it meets a reasonableness standard. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*, 793 S.W.2d, 660, 662 (Tex. 1990). Whether such covenant is a reasonable restraint of trade is a question of law for the court. *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex. 1991). A covenant not to compete must contain reasonable limitations as to time, geographical area, and scope of activity to be restrained. TEX. BUS. & COM. CODE ANN. § 15.50 (West 2011). An industry-wide bar is unreasonable. *Haass*, 818 S.W.2d at 386-88. When applied to a personal services occupation, a restraint on client solicitation is overbroad and unreasonable if it extends to clients with whom the employee had no dealings during his employment. *Id.*

Assuming it applies, the non-competition provision prohibits Woods from being associated with or employed by any business that competes in the business currently engaged in by USRIG or any of its subsidiaries. Moreover, the provision states that the "business currently engaged in by the Company" is not limited to the type of business that Woods performed for USR. We conclude

–7–

section 10(b) does not contain reasonable limitations as to the scope of activity to be restrained. For this reason, the trial court did not err in granting summary judgment for Woods on appellants' claim for breach of the covenant not to compete.

With regard to the nonsolicitation provision in section 10(a), it prohibits Woods from soliciting, attempting to solicit, or accepting business of any "Insured" for whom he has written policies on behalf of the "Company" during the previous twelve-month period. It also prohibits Woods from inducing such "Insureds" to alter their relationships with the "Company." Woods sought summary judgment on the ground that USRIG had no insureds and, therefore, the nonsolicitation provision did not apply to USR's customers. The Agreement defines "Company" as USRIG. Lawrence Wesson, president and chief operating officer of USRIG and president of USR testified at the temporary injunction hearing. He testified that USRIG is a holding company that holds various operating subsidiaries including USR. He admitted that USRIG is not licensed to engage in the business of insurance in the State of Texas but that USR is licensed to do business in Texas.

In order to have standing to sue for breach of this provision, the term "Company" would have to be redefined to mean USR. Appellants counter Woods's interpretation of the contract with two arguments. First, they contend that USR is a third-party beneficiary of the Agreement and, therefore, USR has standing to sue for breach of 10(a).

In Texas, there is a presumption against conferring third party beneficiary status on non-contracting parties. *South Texas Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). To overcome this presumption, the contract must clearly set forth the intention to confer a direct benefit to a third party. *Id.* The intention of the contracting parties is controlling. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999). The intention to contract or confer a direct

benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied. *Id; Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.,* 348 S.W.3d 894, 900 (Tex.2011). We glean the parties' intention from the words of their contract, and not from what they allegedly meant. *Union Pac. R.R. Co. v. Novus Int'l, Inc.,* 113 S.W.3d 418, 421 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). The fact that a person may have an interest in a contract's enforcement does not make him a third party beneficiary. *Carr v. Main Carr Dev., LLC,* 337 S.W.3d 489, 496 (Tex. App.—Dallas 2011, pet. denied).

To support their third-party beneficiary argument, appellants rely on section 17 of the Agreement. That provision states the Agreement is binding upon and inures to the benefit of the "Company, its subsidiaries, affiliates, successors, and assigns." Woods counters that section 17 cannot be used to rewrite section 10(a) to include insured of USR when the Agreement specifically limits that provision to insureds of the Company. Section 10(b) specifically references subsidiaries, section 10(a) does not. Third-party beneficiary status cannot be used to change the unambiguous language in a contract.

Even assuming USR was a third-party beneficiary, it would have no greater contractual rights than were bargained for by the original parties to the contract. *Bynum v. Prudential Residential Servs. Ltd., P'ship,* 129 S.W.3d 781, 793 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). USR contends that as a third-party beneficiary it is simply trying to enforce the Agreement as written. However, as written, the Agreement prohibits Woods from soliciting any insureds of USRIG, not USR. Being a third-party beneficiary would not allow USR to redefine itself as the "Company" thereby allowing it to pursue a claim for solicitation of *its* insureds. Thus, assuming USR could enforce paragraph 10(a), by its terms, there is no breach unless Woods solicited or accepted business of any insureds for whom Woods had written contracts or policies on behalf of the "Company,"

USRIG.

The undisputed summary judgment evidence showed that USRIG did not have any insureds. Appellants did not allege mistake. Even if they had pleaded mistake in drafting provision 10(a) of the Agreement, unilateral mistake would not permit reforming the provision to change "Company" to mean USR. *See Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713-14 (Tex. App.—Dallas 2011, no pet.).

Appellants' second argument relies on section 5 of the Agreement that provides that if the "Company" transfers, promotes, or reassigns Woods to another position, the Agreement will be deemed conformed to reflect the appropriate changes in the terms or conditions of employment. Appellants contend this self-conforming provision permits USR to stand in the place of USRIG as the defined "Company" for whom Woods performed his obligations of the Agreement while in his position with U.S. Risk Brokers and Brett Woods & Associates, both assumed names of USR. We disagree. Woods's employer remained the same both before and after he signed the Agreement. In its response to requests for admissions, USRIG admitted that Woods's employer did not change after he signed the Agreement.

We conclude the trial court properly interpreted the Agreement in granting summary judgment for Woods on appellants' breach of the solicitation and non-compete portions of the Agreement. We overrule appellants' first and second issues.

Appellants contend in their third issue that the trial court erred in denying their motion for summary judgment. In light of the Court's disposition of appellants' first and second issues, we need not address appellants' third issue.

We affirm the trial court's judgment.



MICHAEL J. O'NEILL
JUSTICE

110558F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

U.S. RISK INSURANCE GROUP, INC. AND U.S. RISK, INC., Appellants

No. 05-11-00558-CV     V.

BRETT WOODS, Appellee

Appeal from the 192nd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. 09-04069-K).

Opinion delivered by Justice O'Neill, Justices FitzGerald and Lang-Miers, participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BRETT WOODS recover his costs of this appeal from appellant U.S. RISK INSURANCE GROUP, INC. AND U.S. RISK, INC..

Judgment entered February 25, 2013.

MICHAEL J. O'NEILL
JUSTICE