**AFFIRM; Opinion Filed May 21, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-13-00081-CV
_____

**BARRY NUSSBAUM, Appellant**
**V.**
**ONEWEST BANK, FSB, Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-05740-B**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Myers

Barry Nussbaum appeals the trial court's judgment granting OneWest Bank, FSB's motion for summary judgment. OneWest foreclosed on collateral, an apartment complex, and sued Nussbaum, the guarantor, for the deficiency. Nussbaum brings three issues on appeal asserting the trial court erred by determining Nussbaum had waived his right to a fair market valuation of the property and to have the amount of the deficiency determined from the fair market value, and that the court erred by holding Nussbaum responsible for the deficiency when OneWest failed to mitigate its damages by refusing to sell the property for the amount of the debt. We affirm the trial court's judgment.

### BACKGROUND

In 2009, Watersong Apartments borrowed $9,495,300 from La Jolla Bank to purchase property in Dallas County. Nussbaum signed a guaranty agreement for the loan. In February

2010, La Jolla Bank was closed, and the FDIC transferred some of the assets, including the Watersong Apartments note, guaranty, and related documents, to OneWest. Watersong Apartments defaulted on the note, and OneWest demanded payment under the guaranty from Nussbaum. When Nussbaum failed to pay and Watersong Apartments filed for bankruptcy, OneWest filed suit against Nussbaum alleging Nussbaum breached the guaranty agreement.

OneWest moved for summary judgment on its claim, seeking damages of over $11 million. In April 2012, the trial court granted OneWest's motion for summary judgment awarding damages of $10,747,543.13 for unpaid principal, interest, and late charges. In July 2012, the property securing the note was sold at a foreclosure auction for $4 million.

On July 31, 2012, OneWest moved for final judgment for $6,747,543.13, which was the amount of the April 2012 summary judgment less the $4 million credit. Nussbaum filed a response to the motion for final judgment asserting the foreclosure sale price was below the appraised market value of $8,160,000, requested that the trial court determine the fair market value of the property, and asserted that the deficiency should be computed from the fair market value instead of the foreclosure sale price. *See* TEX. PROP. CODE ANN. § 51.003 (West 2007). Nussbaum also asserted OneWest failed to mitigate its damages because, prior to the foreclosure, Nussbaum received two letters of intent to purchase the property, one for $8 million and the other for $9.5 million, but OneWest refused to entertain either offer. The trial court denied OneWest's motion for final judgment.

In September 2012, OneWest again moved for summary judgment, asserting Nussbaum had waived all defenses to the guaranty except payment. Nussbaum then amended his answer to assert the defense of payment and stated that OneWest's refusal to accept the $9.5 million offer to purchase the property before foreclosure barred OneWest's claims. In his response to the September 2012 motion for summary judgment, Nussbaum asserted he did not waive his

affirmative defenses of failure to mitigate damages, payment, and the right to have the deficiency determined from the fair market value of the property. Nussbaum also asserted that OneWest failed to mitigate its damages by refusing to sell the property to the prospective purchasers for $8 million or $9.5 million.

The trial court granted OneWest's motion for summary judgment and awarded OneWest $6,747,543.13, which was the amount of the April 2012 summary judgment minus the $4 million foreclosure sale price.

## STANDARD OF REVIEW

The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 549; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). If the movant's summary judgment proof establishes the right to judgment as a matter of law, then the burden shifts to the nonmovant to raise an issue of fact on one of the elements of the movant's claim or on each element of an affirmative defense. *Lunsford Consulting Group, Inc. v. Crescent Real Estate Funding VIII, L.P.*, 77 S.W.3d 473, 475 (Tex. App.—Houston [1st Dist.] 2002 no pet.). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

## WAIVER

In his first and second issues, Nussbaum argues the trial court erred by granting OneWest's motion for summary judgment on the ground that Nussbaum had waived his right under section 51.003 of the property code to have the amount of the deficiency determined from the fair market value of the property instead of the foreclosure sale price. Section 51.003 states that a person from whom a deficiency after foreclosure is sought may request that the trial court determine the fair market value of the property. PROP. § 51.003(b). The statute then states,

> If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price. If no party requests the determination of fair market value or if such a request is made and no competent evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency.

*Id.* § 51.003(c). Nussbaum requested that the trial court make this valuation and asserted that the $4 million foreclosure sale price was "well below" the fair market value.

OneWest argued that Nussbaum was not entitled to the valuation because he had waived his right to any setoff. In the guaranty, Nussbaum agreed that:

> Guarantor also waives any and all rights or defenses *based on suretyship or impairment of collateral including*, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; . . . or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. . . .
>
> Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this guaranty for *any claim of setoff*, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

(Emphasis added.) Nussbaum argues these waiver terms did not apply because section 51.003 is not a right or defense "based on suretyship or impairment of collateral" and the right "to an

–4–

offset" under section 51.003(c) is not a "claim of setoff, counterclaim, counter demand, recoupment or similar right" waived by the guaranty.

Citing *Vastine v. Bank of Dallas*, 808 S.W.2d 463 (Tex. 1991), Nussbaum asserts that a right or defense "based on suretyship" must be a right or defense such as the surety's/guarantor's right to be released from liability when there is a material alteration in, and deviation from, the terms of the contract without the surety's consent. *See id.* at 464–65. Although *Vastine* states a material alteration releases the surety or guaranty, nothing in *Vastine* indicates that section 51.003(c)'s entitlement to an offset cannot be a right or defense "based on suretyship."

Nussbaum argues that a right of "setoff" means the right of a defendant in a suit for debt to raise a debt that the plaintiff owes the defendant as a defense or counterclaim. *Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 618 (Tex. 1992). He asserts that the right under section 51.003 to an "offset" is not a right to a "setoff." The terms "offset" and "setoff" are commonly used interchangeably. *See Satis Vacuum Indus. Vertriebs, AG v. Optovision Techs., Inc.*, No. Civ. A. 399CV2147-M, 2001 WL 1142803, *13 n.9 (N.D. Tex. Sept. 24, 2001) ("The terms 'offset' and 'setoff' are used interchangeably under Texas law. However, 'setoff' is the more commonly used term."). Moreover, this Court has concluded that a guaranty that waives the guarantor's right to assert a "setoff" waives the right to an "offset" under section 51.003. *See Cleveland v. Live Oak State Bank*, No. 05-11-00665-CV, 2013 WL 1803733, *3 (Tex. App.— Dallas Apr. 26, 2013, no pet.) (mem. op.).

In *Smith v. Town North Bank*, No. 05-11-00520-CV, 2012 WL 5499406 (Tex. App.— Dallas Nov. 13, 2012, pet. denied) (mem. op.), this Court concluded that language in a continuing guaranty that was identical to the waiver provisions in the guaranty in this case

waived the rights provided by section 51.003(c) and any defense other than payment.[1] *See id.* at *2, 3. We determined that "[t]he waiver language in the continuing guaranty was sufficient to apprise Smith of the rights he was relinquishing and specifically conveyed the intent that Smith's responsibilities as guarantor would not be subject to any defense other than payment." *Id.* at *3. Having concluded in *Smith* that the guarantor waived his right to an offset under section 51.003, we must conclude Nussbaum waived his entitlement to an offset in this case. We overrule Nussbaum's first and second issues.

## FAILURE TO MITIGATE

In his third issue, Nussbaum asserts OneWest failed to mitigate its damages by not selling the property to prospective purchasers who executed letters of intent to purchase the property for $8 million and $9.5 million.[2] Nussbaum asserted he forwarded the letters of intent to OneWest but that OneWest refused to entertain either offer. Nussbaum presented these allegations in his response to OneWest's September 2012 motion for summary judgment. However, Nussbaum did not attach the letters of intent or any other evidence of an offer to purchase the property to its response. In its reply to Nussbaum's response, OneWest pointed out that Nussbaum presented no evidence in support of these allegations. The record does not show that Nussbaum presented

---

[1] The guaranty in *Smith* stated the guarantors, Smith and Nguyen, agreed to waive

> any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent [Town North] from bringing any action, including a claim for deficiency, against Guarantor, before or after [Town North's] commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; . . . or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness.

Smith and Nguyen further

> waive[d] and agree[d] not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by [the borrower], [Smith and Nguyen], or both.

*Smith*, at *1.

[2] In his appellant's brief, Nussbaum asserts that $9.5 million was "the amount of the debt." Although that may have been the approximate amount of the original loan, it was over $1.2 million less than the damages awarded in the April 2012 summary judgment for principal, interest, and late charges. Thus, $9.5 million was not "the amount of the debt" owing under the note.

any evidence of the letters of intent to purchase the property prior to the court's granting the September 2012 motion for summary judgment.[3]  *See* TEX. R. CIV. P. 166a(c) (summary judgment based on evidence "on file at the time of the hearing, or filed thereafter and before judgment with permission of the court").  Accordingly, Nussbaum did not raise a genuine issue of material fact concerning this defense.  We overrule Nussbaum's third issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

130081F.P05

---

[3] Nussbaum attached the letter of intent to purchase the property for $9.5 million to his motion for new trial, but it was not part of the evidence before the court when it rendered judgment.  The record does not contain a copy of the $8 million offer.  Nussbaum does not contend in his appellant's brief that the trial court abused its discretion by failing to grant his motion for new trial.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BARRY NUSSBAUM, Appellant

No. 05-13-00081-CV         V.

ONEWEST BANK, FSB, Appellee

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-05740-B.
Opinion delivered by Justice Myers.
Justices Lang and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ONEWEST BANK, FSB recover its costs of this appeal from appellant BARRY NUSSBAUM.


Judgment entered this 21st day of May, 2014.


/Lana Myers/
LANA MYERS
JUSTICE