**Affirm in part; and reverse in part; Opinion Filed December 21, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00859-CV

**LAWRENCE P. PITTS, Appellant**

**V.**

**THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-RP2; OCWEN LOAN SERVICING, LLC; AND MACKIE WOLF ZIENTZ & MANN, P.C. Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-15415**

## OPINION ON REHEARING

Before Justices Myers, Evans, and Brown
Opinion by Justice Myers

We withdraw this Court's opinion and vacate the judgment of October 12, 2018. This is now the opinion of the Court. We deny appellees' motion for rehearing.

This case concerns whether a lender conclusively proved it had abandoned an acceleration of the maturity date of a loan. Lawrence P. Pitts appeals the trial court's judgment in favor of The Bank of New York Mellon Trust (the Bank), its loan servicer, Ocwen Loan Servicing, LLC, and the law firm representing Ocwen in servicing loans, Mackie Wolf Zientz & Mann, P.C. Pitts brings two issues on appeal contending the trial court erred by granting the Bank's motion for summary judgment on his suit for declaratory judgment, to quiet title, for fraud, and for violations of the

Texas Finance Code. In the first issue, Pitts contends the trial court erred by granting appellees' motion for summary judgment on his cause of action for declaratory judgment. In the second issue, Pitts contends the trial court erred by granting appellees' motion for summary judgment on his suit to quiet title to the property and on his claims for fraud and violations of the Texas Finance Code. We affirm the trial court's judgment as to Pitts's claim for violations of the Texas Finance Code, but we reverse the trial court's judgment and remand the case for further proceedings as to Pitts's other claims.

## BACKGROUND

In 1994, Pitts's company, Castle Mortgage Corporation, borrowed $152,800 from Home Savings of America, FSB, for the purchase of a house. The note required Castle Mortgage to make monthly payments on the note until the due date of October 15, 2034, when all sums due had to be paid in full. The note was secured by a deed of trust on the house. In 2007, Castle Mortgage transferred the property to Platinum Funding Solutions LLC, of which Pitts is the director. In 2016, Platinum Funding Solutions transferred the property to Pitts. The note was transferred from the original lender to various entities until it was transferred to its current holder, the Bank.

Castle Mortgage's last payment was on September 15, 2010. Pitts alleged that on December 17, 2010, the servicer of the loan at that time sent Castle Mortgage a letter stating the maturity date of the loan was accelerated.[1] Castle Mortgage did not pay the amount due, but the holder of the note did not foreclose on the deed of trust. On September 1, 2013, Ocwen became the loan servicer. Beginning that month, Ocwen sent monthly statements to Castle Mortgage that stated the "Total Amount Due" was the amount of the missed payments plus late charges and fees. The monthly statements did not state the amount due was the full outstanding amount of the loan.

---

[1] There is no summary judgment evidence of whether or when this first acceleration occurred, but appellees did not dispute Pitts's allegation that acceleration of the maturity date occurred on December 17, 2010.

Beginning in May 2014, Ocwen also sent "Delinquency Notice[s]" to Castle Mortgage. The delinquency notices said Castle Mortgage was late on the mortgage payments and warned that "[f]ailure to bring your loan current may result in fees and foreclosure—the loss of your home." The notices also set forth an amount less than the full amount of the loan and said, "You must pay this amount to bring your loan current." On March 31, 2015, Ocwen sent Castle Mortgage notice of default and of the Bank's intent to accelerate the loan. On January 26, 2016, Ocwen sent Castle Mortgage notice that the maturity date of the loan had been accelerated and that all unpaid principal and interest was due.

On December 2, 2016, Pitts filed this lawsuit seeking declarations that the Bank had no right to foreclose because the deed of trust was invalid, void, and unenforceable, that foreclosure was barred by the statute of limitations, and demanding that the cloud on Pitts's title to the property be removed. Pitts also brought causes of action for fraud and violations of section 392.304 of the Texas Finance Code for appellees' representations that the debt was not barred by limitations and that they had the legal authority to foreclose on the property when they knew they could not. *See* TEX. FIN. CODE ANN. § 392.304. The Bank and Ocwen filed a counterclaim against Pitts seeking declaratory judgment that foreclosure on the property was not time barred and that the "December 17, 2016 [sic] acceleration was rescinded." They also requested an award of attorney's fees.

Appellees moved for summary judgment, asserting that the 2010 acceleration had been abandoned by the monthly statements' and delinquency notices' requests for payment of less than the full accelerated amount. They also asserted that the cause of action under the Finance Code should be dismissed because the loan to Castle Mortgage was a commercial loan and section 392.304 protects consumers, not commercial borrowers.

The trial court granted appellees' motion for summary judgment and ordered that Pitts take nothing on his claims. The trial court's judgment did not directly address appellees' counterclaims,

but the judgment did state, "This order fully and finally disposes of all parties and claims and may be appealed." *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93, 206 (Tex. 2001) (statement in otherwise-interlocutory judgment that it "finally disposes of all parties and all claims and is appealable" makes judgment final because "it states with unmistakable clarity that it is a final judgment as to all claims and all parties").

## SUMMARY JUDGMENT

The standard for reviewing a traditional summary judgment is well established. *See McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Tex. Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 489, 492 (Tex. 2018).

## STATUTE OF LIMITATIONS ON INSTALLMENT NOTE

In his first issue, Pitts contends the trial court erred by granting appellees' motion for summary judgment on his claims for declaratory judgment. Pitts asserted that appellees' right to foreclose on the property was barred by the statute of limitations.

Section 16.035 of the Civil Practice and Remedies Code provides:

> (a) A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.

(b) A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues.

. . . .

(d) On the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void.

(e) If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.035. Thus, "default does not ipso facto start limitations running on the note." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). Instead, the holder's cause of action accrues when the note reaches its maturity date or the holder exercises its option to accelerate the note's maturity date. *Id.* The holder may abandon[2] the acceleration. *See id.* "If acceleration is abandoned before the limitations period expires, the note's original maturity date is restored and the noteholder is no longer required to foreclose within four years from the date of acceleration." *Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL 1026268, at *3 (Tex. App.—Dallas Feb. 23, 2018, pet. denied) (mem. op.) (quoting *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x. 677, 679 (5th Cir. 2015) (per curiam)). There is no single form an abandonment may take. "In the absence of an express notice of rescission of acceleration, the lender may show abandonment of acceleration by conduct." *Id.* Abandonment of acceleration is based on the law of waiver. *Farmehr v. Deutsche Bank Nat'l Trust Co.*, No. 05-17-00563-CV, 2018 WL 2749634, at *2 (Tex. App.—Dallas May 31, 2018, no pet.) (mem. op.); *Bracken*, 2018 WL 1026268, at *5. Under Texas law, the elements of waiver include: (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional

---

[2] Cases refer to "waiver," "abandonment," and "rescission" of acceleration of a loan's maturity date. The usage appears synonymous. *See also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.038 ("Rescission or Waiver of Accelerated Maturity Date").

conduct inconsistent with the right. *Farmehr*, 2018 WL 2749634, at *2; *Bracken*, 2018 WL 1026268, at *5.

## DECLARATORY JUDGMENT

Appellees moved for summary judgment on Pitts's declaratory judgment cause of action on the ground that the Bank had, as a matter of law, abandoned the December 2010 acceleration of the loan's maturity date within four years of the acceleration. Appellees argued the monthly statements and delinquency notices demanded payment of only the amount of the missed payments, charges, and fees and not the full accelerated amount of the loan. Therefore, appellees asserted, the monthly statements and delinquency notices constituted conclusive evidence of abandonment of the 2010 acceleration.

All the monthly statements and all but one of the delinquency notices were sent to Castle Mortgage within four years of the first acceleration, but the second acceleration of the note occurred outside the four-year limitations period.[3] Therefore, if the monthly statements and delinquency notices constituted conclusive proof of abandonment of the 2010 acceleration, then the trial court correctly granted appellees' motion for summary judgment. However, if the monthly statements and delinquency notices did not conclusively establish abandonment of the 2010 acceleration, then the trial court erred by granting the motion for summary judgment on that ground.

A noteholder that has accelerated the maturity date of a loan may unilaterally abandon that acceleration and return the note to its original terms. It may do that through notice to the borrower that expressly states the holder is abandoning the acceleration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.038. Or, it may do so through other conduct that is inconsistent with acceleration of the

---

[3] The last delinquency notice sent to Castle Mortgage was dated December 20, 2014, which was more than four years after the December 17, 2010 acceleration.

note. For example, in *Holy Cross Church of God in Christ v. Wolf*, the supreme court concluded that a noteholder "can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." 44 S.W.3d at 566–67. However, the supreme court has not addressed whether a holder establishes abandonment of acceleration as a matter of law when the borrower does not make any payments, the holder does not expressly abandon the earlier acceleration, and the only evidence of abandonment is the holder's notice to a borrower that the amount currently due is less than the full accelerated balance.

In *Boren v. U.S. National Bank*, 807 F.3d 99 (5th Cir. 2015), the Fifth Circuit faced the question of whether, under Texas law, a lender's statement that it will accept payment of less than the full accelerated amount owing constitutes conclusive evidence of abandonment of an earlier acceleration of a loan when the borrowers made no additional payments. In *Boren*, the Borens defaulted on the loan by missing payments, and the bank notified the Borens that it had accelerated the loan's maturity date. *Id.* at 102. Within four years, the bank sent the Borens three notices of default stating an "amount necessary to bring [the Borens'] loan current" that was less than the full accelerated amount of the loan. *Id.* at 103. The notices of default also stated that if the Borens "did not cure the default within forty five (45) days . . . [the loan servicer would] accelerate the maturity of date [sic] of the Note and declare all outstanding amounts under the Note immediately due and payable." *Id.* The Borens did not cure the default. When four years had elapsed from the first acceleration, the Borens brought suit seeking a declaratory judgment that the bank's right to foreclose was barred by limitations. *Id.* The bank filed a counterclaim for foreclosure. *Id.* Both sides moved for summary judgment. The district court concluded the bank had "through its actions, abandoned its previous acceleration of the debt." *Id.* The district court granted the bank's motion for summary judgment and denied the Borens'. *Id.* In reviewing the district court's

decision, the Fifth Circuit made an "*Erie* guess" about how the Texas Supreme Court would rule in this situation:

> The Texas Supreme Court would likely hold that a lender may unilaterally abandon acceleration of a note, thereby restoring the note to its original condition, in the manner that U.S. Bank did in this case:  by sending notice to the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms.

*Id.* at 105.  In applying this rule, the Fifth Circuit observed that the bank stated in the notices of default "that the bank would accelerate the maturity date of the loan if the Borens failed to pay this amount."  *Id.* at 106.  The court stated that "[t]his notice," i.e., that the Borens could cure the default by making payments to bring the loan current under its original terms *and* that the bank would accelerate the note if the Borens failed to do so,

> unequivocally manifested an intent to abandon the previous acceleration and provided the Borens with an opportunity to avoid foreclosure if they cured their arrearage.  As a result, the statute of limitations period under § 16.035(a) ceased to run at that point and a new limitations period did not begin to accrue until the Borens defaulted again and U.S. Bank exercised its right to accelerate.

*Id.*  The Fifth Circuit affirmed the summary judgment for the bank, which means the court determined the notices of default conclusively established abandonment of the first notice of acceleration.

Following the Fifth Circuit's opinion in *Boren*, six opinions from Texas courts have applied its reasoning to determine whether a noteholder had abandoned an earlier acceleration of the note's maturity date. *See Brannick v. Aurora Loan Servs., LLC*, No. 03-17-00308-CV, 2018 WL 5729104 (Tex. App.—Austin Nov. 2, 2018, no pet. h.) (mem. op.); *Farmehr v. Deutsche Bank Nat'l Trust Co.*, No. 05-17-00563-CV, 2018 WL 2749634 (Tex. App.—Dallas May 31, 2018, no pet.) (mem. op.); *Nationstar Mortg., LLC v. Landers*, No. 12-17-00047-CV, 2018 WL 1737013 (Tex. App.—Tyler Apr. 11, 2018, no pet.) (mem. op.); *Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL 1026268 (Tex. App.—Dallas Feb. 23, 2018, pet. denied) (mem. op.); *Emmert v.*

–8–

*Wilmington Sav. Fund Soc'y, F.S.B.*, No. 02-17-00119-CV, 2018 WL 1005002 (Tex. App.—Fort Worth Feb. 22, 2018, no pet.) (mem. op.); *NSL Prop. Holdings, LLC v. Nationstar Mortg., LLC*, No. 02-16-00397-CV, 2017 WL 3526354 (Tex. App.—Fort Worth Aug. 17, 2017, pet. denied) (mem. op.). The borrowers in these cases asserted limitations barred foreclosure because more than four years had passed from a notice of acceleration. In each case except *Nationstar Mortgage*, the noteholder moved for summary judgment on the ground that it had conclusively established abandonment of the earlier acceleration by sending the borrower a notice of default that (1) demanded payment of only the past due amounts and not the full accelerated amount and (2) stated that if the borrower failed to pay the demanded amount, then the maturity date of the note would be accelerated. *See Brannick*, 2018 WL 5729104, at *3;[4] *Farmehr*, 2018 WL 2749634, at *3;[5] *Bracken*, 2018 WL 1026268, at *4;[6] *Emmert*, 2018 WL 1005002, at *3;[7] *NSL Prop. Holdings*,

---

[4] In *Brannick*, the court stated:

Subsequently, in a letter dated April 19, 2013, Nationstar notified Douglas that he was in default and gave him an opportunity to cure by paying $146,372.24 (also less than the full amount due) within thirty-five days. The letter further informed Douglas of Nationstar's conditional intent to accelerate the Note and make "the entire sum of both principal and interest due and payable" if he failed to cure the default.

*Brannick*, 2018 WL 5729104, at *3.

[5] In *Farmehr*, this Court stated:

July 28, 2014 Deutsche Bank's loan servicer sent the Elferses a letter under the heading "DEMAND LETTER—NOTICE OF DEFAULT." The letter stated that (i) the Elferses' mortgage was in default, (ii) the Elferses could cure the default by paying within thirty days the past due amounts, late charges, and advances, and (iii) the lender would accelerate the note if the Elferses did not pay the cure amount.

*Farmehr*, 2018 WL 2749634, at *3.

[6] In *Bracken*, this Court stated:

Finally, in February 2011, Wells Fargo sent the Brackens a notice of default and intent to accelerate which informed the Brackens that they were in default, that they needed to pay the past-due balance to cure their default, and that failure to cure the default within 30 days would result in acceleration of the Loan.

. . . .

[T]he 2011 notice unequivocally manifested an intent to abandon the 2009 acceleration and provided the Brackens with an opportunity to avoid foreclosure if they cured their arrearage. Taking as true all evidence favorable to the Brackens and indulging every reasonable inference in their favor, we conclude that Wells Fargo conclusively established that it abandoned the 2009 acceleration.

*Bracken*, 2018 WL 1026268, at *4–5.

[7] In *Emmert*, the court stated:

This notice told the Emmerts: (1) that the loan was in default; (2) that Emmert needed to make payments "of all sums necessary to bring such loan current according to [its] terms," which was $67,806.99 plus interest and additional charges; (3) that if they failed to cure the default within thirty days, "the Mortgage Servicer **will accelerate** the maturity date of the Note

–9–

2017 WL 3526354, at *3.[8]  The courts of appeals concluded that the notices to the borrowers conclusively established the noteholders' abandonment of the earlier accelerations.  *See Brannick*, 2018 WL 5729104, at *3; *Farmehr*, 2018 WL 2749634, at *4; *Bracken*, 2018 WL 1026268, at *5; *Emmert*, 2018 WL 1005002, at *3; *NSL Prop. Holdings*, 2017 WL 3526354, at *5–6.  In *Nationstar Mortgage*, the borrower moved for summary judgment on its limitations defense, and the noteholder, citing *Boren*, asserted it had abandoned the earlier acceleration.[9]  *Nationstar Mortg.*, 2018 WL 1737013, at *5.  The trial court granted the borrower's motion for summary judgment, but the court of appeals reversed, concluding the noteholder's notices to the borrower raised a fact question concerning whether the noteholder had abandoned the earlier acceleration.  *Id.* at *7.

In this case, appellees' monthly statements and delinquency notices indicated that the Bank would accept payment of an amount less than the full accelerated balance.  But the statements and notices contained no language similar to that in *Boren* and the cases following *Boren* stating that if Castle Mortgage did not pay the amount demanded, then the loan would be accelerated.  Language stating that the loan *would be* accelerated is inconsistent with an earlier notice of acceleration and clearly establishes the noteholder's abandonment of the earlier acceleration

---

evidencing the loan and declare all sums due thereunder immediately due and payable," and "[t]he property will then be scheduled for foreclosure sale"; and (4) that Emmert had the right to reinstate after acceleration.

*Emmert*, 2018 WL 1005002, at *3.

[8] In *NSL Property Holdings*, the court stated:

Finally, the letter stated that "[i]f the default is not cured on or before February 26, 2010, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time" and "[f]ailure to bring your loan current or to enter into a written agreement by February 26, 2010 as outlined above will result in the acceleration of your debt."

*NSL Prop. Holdings*, 2017 WL 3526354, at *3.

[9] In *Nationstar Mortgage*, the court stated:

The second letter, dated July 31, 2013, notified the Landerses that they were in default of the note and deed of trust. It further indicated that their account was due for the July 2009 payment and subsequent payments totaling $209,258.96, an amount less than the full amount due on the note. The letter stated as follows:

[Y]ou have the right to cure the default by paying the total amount due listed above, within 30 days from the date of this letter. . . . [U]nless we receive full payment of all past-due amounts by the date above, we will accelerate the entire sum of both principal and interest due and payable, and invoke any remedies in the Note and Security Instrument, including but not limited to the foreclosure sale of the property.

*Nationstar Mortg.*, 2018 WL 1737013, at *5.

because, if the noteholder intended to rely on the earlier notice of acceleration, it would not state that acceleration could occur in the future. Without that language, the monthly statements and delinquency notices in this case lack one of the two bases for the Fifth Circuit's conclusion in *Boren* that the notices to the borrower conclusively established the noteholder's abandonment of an earlier acceleration.

Further, the monthly statements and one of the delinquency notices in this case contain language that is consistent with continued reliance on the earlier acceleration. Each of the monthly statements stated, "Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only." The first delinquency notice dated May 20, 2014 stated, "Your account has been referred to an attorney for foreclosure. The first step in this process, the first filing was completed." Thus, the monthly statements and the first delinquency notice indicated that the loan was in the process of being foreclosed. The power of sale in the deed of trust authorized foreclosure of the property after the holder had "declare[d] all sums secured hereby to be immediately due and payable," that is, after the holder had accelerated the note's maturity date. The language in the monthly statements and first delinquency notice that the loan was in the process of foreclosure indicated that the loan's maturity date had already been accelerated and that the noteholder did not intend to abandon the prior acceleration. Neither *Boren* nor the six Texas cases following it contained language that the loans were in the process of foreclosure when the noteholders sent the notices.

Appellees point out that the second delinquency notice, which issued seventy-one days after the first delinquency notice, contained no language about the loan being in foreclosure. They also point out that the remaining four delinquency notices within the limitations period stated, "Your account has been referred to an attorney for foreclosure. The first step in this process, the

first legal filing, has not yet been completed."[10]  The second delinquency notice's lack of any mention of foreclosure does not conclusively establish that the account was not in the process of foreclosure.  The remaining delinquency notices' statement that "the first filing has not yet been completed" contradicted the first delinquency notice's statement that "the first filing was completed."  The delinquency notices, read together, raised a genuine and material issue of fact regarding whether the account was in the process of foreclosure.[11]  And that fact issue raises a genuine issue of material fact regarding whether the Bank abandoned the 2010 acceleration.

Appellees also refer to the affidavit of Beonide Durandisse, Ocwen's contract manager coordinator.  Durandisse stated,

> After Ocwen took over as the servicer of the loan agreement, it sent to Castle a number of monthly statements and delinquency notices.  In these monthly statements and delinquency notices, Ocwen requested from Castle the amount needed to reinstate the loan.  The reason for these requests for payment of only the amount needed to reinstate the loan is that Ocwen, as the servicer of the loan agreement for the Bank of New York, decided to allow Castle to avoid foreclosure by reinstating the loan.  Ocwen, in making this decision to allow Castle to reinstate the loan, decided to abandon any prior acceleration of the loan agreement that may have been performed by the prior servicers of the loan agreement.

This testimony does not conclusively establish that the Bank had, in fact, abandoned the 2010 acceleration when it sent the monthly statements and delinquency notices.  The monthly statements and one of the delinquency notices indicated that the account was in the process of foreclosure, which required that the maturity date be accelerated.  The remaining delinquency notices sent within the limitations period either did not mention that the foreclosure process had begun or said that the loan had been referred to an attorney for foreclosure.  It is inferable from Durandisse's

---

[10] Appellees also point out that the delinquency notice dated December 20, 2014 contained no statement that the account had been referred to an attorney for foreclosure.  However, the four-year limitations period expired before this date, so this notice is not relevant for determining whether the Bank abandoned the December 17, 2010 acceleration.

[11] Appellees assert in their motion for rehearing that the July delinquency notice and subsequent delinquency notices "establish that the loan was not in the process of foreclosure from July of 2014 onward."  We disagree.  As appellees acknowledge, the May delinquency notice "suggests the loan is in active foreclosure."  The subsequent delinquency notices' failure to mention the foreclosure process does not establish that the loan was no longer in the foreclosure process.  At most, those notices raise a fact question when read with the first delinquency notice regarding the loan's status in the foreclosure process, but their failure to mention the foreclosure process did not conclusively prove appellees had removed the loan from the foreclosure process.

testimony, the monthly statements, and the delinquency notices that the Bank had decided it would abandon the prior acceleration if Castle paid the amount demanded but that foreclosure would proceed based on the prior acceleration if Castle did not pay the amount demanded. Unlike the demand letters in the cases following *Boren*, the summary judgment evidence does not conclusively establish abandonment of the 2010 acceleration.

Appellees' demand for payment of less than the full accelerated amount may have indicated an intent to abandon the 2010 acceleration. However, the absence of language in the monthly statements and delinquency notices indicating an intent to accelerate in the future, combined with the language that the loan was in the process of being foreclosed, raised a genuine issue of material fact concerning whether appellees had abandoned the prior acceleration.[12]

We conclude a genuine issue of material fact exists concerning whether appellees abandoned the 2010 acceleration of the loan's maturity date before the expiration of the statute of limitations. Accordingly, we conclude the trial court erred by granting appellees' motion for summary judgment on Pitts's declaratory judgment claim. We sustain Pitts's first issue.

## OTHER CLAIMS

In his second issue, Pitts contends the trial court erred by granting summary judgment on his claims for suit to quiet title, fraud, and violations of the Texas Finance Code. Except for the claim for violations of the Finance Code, appellees' sole ground for summary judgment on these claims was that they conclusively established they had abandoned the prior acceleration. As

---

[12] In reaching this conclusion, we considered the effect that a contrary ruling, i.e., that the monthly statements and notices of delinquency in this case conclusively established abandonment of an earlier acceleration, would have in other circumstances. If a noteholder had accelerated the loan's maturity date, sent the statements and notices in this case, and foreclosed within four years of the acceleration without sending another notice of acceleration, the borrower might sue for wrongful foreclosure asserting foreclosure occurred before the loan was matured. In such a case, the noteholder would argue that the loan had matured because it had accelerated the maturity date. But the borrower would assert that the statements and notices conclusively established the noteholder's abandonment of the earlier acceleration, citing *Boren* and the cases following it. In such a case, we have no doubt that the noteholder would assert that *Boren* and the cases following it do not apply and that there was no abandonment of the acceleration because (1) the statements and notices lacked language indicating an intent to accelerate in the future, and (2) the statements and notices stated the loan was being foreclosed, which indicated that the noteholder had not abandoned the earlier acceleration. If appellees in this case were correct, the noteholder in the hypothetical case might be subject to a summary judgment of liability for wrongful foreclosure.

–13–

discussed above, appellees failed to prove conclusively they had abandoned the first acceleration. Therefore, we sustain Pitts's second issue as to his causes of action for suit to quiet title and fraud.

On Pitts's claim for violations of the Finance Code, appellees presented a second ground, that the statute relied on by Pitts does not apply to Castle Mortgage's loan because the loan was not a consumer debt. *See* FIN. § 392.001(2). On appeal, Pitts asserts the first ground lacks merit because appellees did not abandon the first acceleration clause, but he does not address the second ground concerning the statute's applicability to Castle Mortgage's loan. Because Pitts's arguments on appeal do not address all the grounds for summary judgment on this cause of action, he cannot show the trial court erred by granting appellees' motion for summary judgment on this cause of action. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (party appealing a summary judgment must attack every ground on which summary judgment could have been granted in order to obtain a reversal); *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 727 (Tex. App.—Dallas 2015, no pet.) (appellate court may affirm summary judgment on ground not challenged on appeal). We overrule Pitts's second issue as to his cause of action for violations of the Finance Code.

## CONCLUSION

We affirm the trial court's judgment as to Pitts's cause of action for violations of the Texas Finance Code, but we otherwise reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

/Lana Myers/

170859HF.P05
LANA MYERS
JUSTICE

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

Lawrence P. Pitts, Appellant

No. 05-17-00859-CV      V.

The Bank of New York Mellon Trust
Company, National Association FKA the
Bank of New York Trust Company N.A. as
successor to JP Morgan Chase Bank, N.A.,
as Trustee for Residential Asset Mortgage
Products, Inc., Mortgage Asset-Backed
Pass-Through Certificates Series 200005-
RP2; Ocwen Loan Servicing, LLC; and
Mackie Wolf Zientz & Mann, P.C.,
Appellees

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-15415.
Opinion delivered by Justice Myers.
Justices Evans and Brown participating.

This Court's judgment of October 12, 2018 is **VACATED**; the following is now the judgment of this Court.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **AFFIRM** the trial court's judgment as to appellant Lawrence P. Pitts's cause of action for violations of the Texas Finance Code, and we **REVERSE** the trial court's judgment in all other respects. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant Lawrence P. Pitts recover his costs of this appeal from appellees The Bank of New York Mellon Trust Company, National Association FKA the Bank of New York Trust Company N.A. as successor to JP Morgan Chase Bank, N.A., as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 200005-RP2; Ocwen Loan Servicing, LLC; and Mackie Wolf Zientz & Mann, P.C.

Judgment entered this 21st day of December, 2018.