**McAFEE, INC., Appellant,**

v.

**AGILYSYS, INC., Appellee.**

**No. 05–08–01168–CV.**

Court of Appeals of Texas,
Dallas.

July 21, 2010.

Rehearing Overruled Aug. 26, 2010.

Mark A. Shank, Vanessa Jean Rush, Gruber Hurst Johansen & Hail LLP, Dallas, TX, for Appellant.

Robert M. O'Boyle, Strasburger & Price LLP, Austin, TX, for Appellee.

Before Justices O'NEILL, LANG–MIERS, and MYERS.

## OPINION

Opinion By Justice MYERS.

McAfee, Inc. appeals the summary judgment on its claims in favor of Agilysys, Inc. McAfee brings two issues asserting the trial court erred (1) by granting Agilysys's motion for summary judgment and (2) by awarding Agilysys court costs and considering awarding Agilysys attorney's fees. We reverse the trial court's judgment in part and affirm in part, and we remand the cause to the trial court for further proceedings.

## BACKGROUND

In 1997, McAfee and Agilysys's predecessors[1] signed an agreement called the Systems Integration Purchase Agreement. Under this agreement, Agilysys agreed to oversee the manufacturing, shipping, servicing, and support for McAfee's products to McAfee's customers. The agreement was supplemented by "Statement[s] of Services & Expectations."

The issue in this case is Agilysys's responsibility for extended warranties. The Statement of Services and Expectations contained a warranty provision stating Agilysys provided a thirty-day warranty from the date of shipping and that any manufacturer's warranties were passed on to McAfee. The Statement also said that although Agilysys itself did not provide extended-warranty services or on-site repairs, it had an agreement with another company, Barrister GIS, to provide extended warranties and repairs, and that it "outsourced" the warranty service to Barrister.

McAfee purchased many extended warranties from Agilysys that were "outsourced" to Barrister. Barrister invoiced Agilysys for the warranties, and Agilysys billed McAfee, but for a greater amount than Barrister charged. During the course of McAfee and Agilysys's business relationship, McAfee paid Agilysys over $900,000 for extended warranties, and Agilysys retained over $300,000 from McAfee's purchases of the extended warranties. Agilysys's vice president and corporate counsel, Rita Thomas, testified in her deposition that the additional revenues were to cover Agilysys's administrative costs for the Barrister warranties and "in taking a little profit."

In August 2004, McAfee stopped using Agilysys to provide its products, and in

---

1. Agilysys's predecessors were Pioneer–Standard Electronics, Inc. and KeyLink Systems, and McAfee's predecessor was Network General Corporation. For ease of reference, the parties shall be referred to as "Agilysys" and "McAfee" regardless of the entity's name at the time.

March 2005, McAfee and Agilysys signed a settlement and release agreement terminating all their agreements except for specifically named agreements. The agreements extending beyond the release included the warranties for any products purchased by McAfee from Agilysys.

On August 29, 2005, Hurricane Katrina destroyed Barrister's repair facilities in Louisiana. Barrister was unable to provide its warranty services thereafter. Agilysys denied it had any continuing responsibility for the pre-paid extended warranties. In March 2007, McAfee sued Agilysys and Barrister. McAfee later nonsuited all its claims against Barrister.

■ McAfee's claims against Agilysys included breach of contract, breach of fiduciary duty, money had and received, unjust enrichment, and promissory estoppel.[2] McAfee sought damages of either the amount it expended to repair the broken units or the amount it prepaid for the warranties in effect in August 2005. Agilysys moved for summary judgment, asserting that as a matter of law it had no duty to McAfee for the prepaid extended warranties and that McAfee had no evidence to support its claims. The trial court granted Agilysys's motion for summary judgment and rendered a take-nothing judgment against McAfee on its claims.

## CHOICE OF LAW

■ The Systems Integration Purchase Agreement provided, "This Agreement shall be governed and construed in accordance with the laws of the state of Ohio." McAfee contends the law of Ohio applies to this case, and Agilysys does not dispute the validity of the choice-of-law provision. Generally, courts apply the parties' choice of law provided the law of the chosen state bears some reasonable relationship to the parties and the transaction. *See DeSantis v. Wackenhut,* 793 S.W.2d 670, 677–78 (Tex.1990); *Lockheed Martin Corp. v. Gordon,* 16 S.W.3d 127, 133–34 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). In applying a contractual choice-of-law provision, Texas courts apply the substantive law of the choice-of-law provision but apply Texas law to matters of remedy and procedure. *Autonation Direct.com, Inc. v. Thomas A. Moorehead, Inc.,* 278 S.W.3d 470, 472 (Tex.App.-Houston [14th Dist.] 2009, no pet.). Procedure includes standards of review. *Id.*

Agilysys is an Ohio corporation, and the Systems Integration Purchase Agreement stated that the address of the Agilysys predecessor that signed the Agreement was in Ohio. The substantive laws of Ohio and Texas at issue in this case are consistent, so application of either state's substantive law leads to the same result.

## SUMMARY JUDGMENT

In its first issue, McAfee asserts the trial court erred in granting Agilysys's motions for summary judgment because Agilysys failed to establish as a matter of law that it had no liability for Barrister's failure to provide the extended-warranty services or a genuine issue of material fact exists regarding Agilysys's liability.

---

**2.** McAfee also alleged a cause of action against Agilysys titled "Willful Misconduct." The trial court granted Agilysys's motion for summary judgment on that cause of action, but McAfee does not discuss that cause of action in its brief on appeal. Accordingly, any error in the granting of Agilysys's motion for summary judgment on that cause of action is waived. *See Malooly Bros., Inc. v. Napier,*

461 S.W.2d 119, 120–21 (Tex.1970); *Smith v. Tilton,* 3 S.W.3d 77, 83, 87 (Tex.App.-Dallas 1999, no pet.) ("Because appellant's brief does not challenge this possible ground for summary judgment, she has waived any error with respect to the entry of summary judgment on her claim for intentional infliction of emotional distress arising from the dun letters episode.").

## Standard of Review

The standard for reviewing a traditional summary judgment is well established. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Private Mini Storage Realty, L.P. v. Larry F. Smith, Inc.*, 304 S.W.3d 854, 858 (Tex.App.-Dallas 2010, no pet.). Defendants who move for summary judgment must show the plaintiffs have no cause of action. Defendants may meet this burden by either disproving at least one essential element of each theory of recovery or conclusively proving all elements of an affirmative defense. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). After the movants have established a right to summary judgment, the burden shifts to the nonmovants to present evidence creating a fact issue. *Denson v. Dallas County Credit Union*, 262 S.W.3d 846, 849 (Tex.App.-Dallas 2008, no pet.). When multiple grounds for summary judgment are raised and the trial court does not specify the ground or grounds relied upon for its ruling, the appellate court will affirm the summary judgment if any of the grounds advanced in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 684 (Tex. App.-Dallas 2007, pet. denied).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* Tex.R. Civ. P. 166a(i); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex.App.-Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Flood*, 294 S.W.3d at 762. When analyzing both traditional and no-evidence summary judgments, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex.2006) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

## Breach of Contract

■ McAfee asserts the trial court erred in granting Agilysys's motion for summary judgment on McAfee's breach-of-contract cause of action. The essential elements of a breach-of-contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *Jarupan v. Hanna*, 173 Ohio App.3d 284, 878 N.E.2d 66, 73 (2007); *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex.App.-Houston [1st Dist.] 2009, pet. denied). Neither party disputes the validity of the contract. McAfee presented some evidence that it performed by paying for the optional-cost extended warranties, and

that it sustained damages. The disputed issue is whether the defendant, Agilysys, breached the contract.

■ When construing a contract, our primary goal is to determine the parties' intent as expressed in the terms of the contract. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256, 1261 (2003); *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex.2009); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *Chrysler Ins. Co.*, 297 S.W.3d at 252; *Coker*, 650 S.W.2d at 393; *see Westfield Ins. Co.*, 797 N.E.2d at 1261. A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 796 (6th Cir. 2002) (applying Ohio law); *Coker*, 650 S.W.2d at 393; *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex.App.-Dallas 2005, no pet.). We review an unambiguous contract de novo. *Chrysler Ins. Co.*, 297 S.W.3d at 252. When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 394; *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 56 (Tex.App.-Dallas 2006, pet. denied).

■ In its motion for summary judgment, Agilysys asserted contractual documents consisting of the Systems Integration Purchase Agreement, the Statement of Services and Expectations, Barrister's service terms and conditions for its warranty services, and the March 2005 settlement agreement established as a matter of law that Agi-lysys was not liable to McAfee on its claims.

Section 8.1 of the Systems Integration Purchase Agreement stated that Agilysys warranted the products to be free from defects in its workmanship and assembly for ninety days and that the company provided no other warranty. The Statement of Services and Expectations contained the following information about warranties:

8 WARRANTY STATEMENT & RETURNED MATERIALS AUTHORIZATION PROCESS

8.1 Warranty Statement

[Agilysys] offers a workmanship warranty on systems that ... is valid for 30 days from time of shipment. All components integrated by [Agilysys] carry an original manufacturer's warranty. The Manufacturer's warranty is passed through to [McAfee]. [Agilysys] does not provide any warranty services past 30 days nor does it provide break/fix warranty services.

[Agilysys] has an agreement with Barrister GSN (Global Services Network) for DOA [dead on arrival] and extended warranty delivery services.... This optional-cost warranty service is outsourced by [Agilysys] to Barrister GSN. Barrister terms and conditions of this warranty will need to be accepted by [McAfee] prior to bundling warranty services with [McAfee]'s product.

Barrister's "terms and conditions" provided that Agilysys was "not liable for Services provided by Barrister." The March 2005 settlement agreement provided that all agreements between the parties were terminated except for certain provisions, including "for any products purchased by McAfee from Agilysys where the warranty for such products extends beyond the termination of the Purchase Agreement, such warranties will continue in full force and effect until such warranties expire by their own terms."

Agilysys argues the language in section 8.1 of the Statement of Services and Expectations, that it "does not provide any warranty services past 30 days nor does it provide break/fix warranty services," bars McAfee's claim that it was liable on the extended warranties. Agilysys argues it had no liability under the settlement agreement's provision that warranties survived the termination of the parties' agreements because, at the time of the March 2005 settlement agreement, more than thirty days had passed since Agilysys last provided equipment to McAfee in August 2004. Thus, Agilysys argues, by the time of the settlement agreement, all of Agilysys's thirty-day warranties had expired, and it provided no other warranties that could have existed beyond the date of the settlement agreement.

McAfee argues the Statement of Services and Expectations does not exclude Agilysys from liability on the extended warranties. The document states Agilysys "does not provide any warranty services past 30 days nor does it provide break/fix warranty services." However, it also states that Agilysys had an agreement with Barrister for "extended warranty delivery services," which Agilysys "outsourced" to Barrister. McAfee argues "outsourced" meant Agilysys promised to provide the extended-warranty services (if purchased) through its contract with Barrister; Agilysys argues "outsourced" meant it was not promising to provide the warranty services but was stating the services were provided by Barrister. Thus, whether Agilysys was entitled to summary judgment on McAfee's breach-of-contract claim depends on whether a genuine issue of material fact exists concerning the meaning of the word "outsourced."

According to dictionaries, the word "outsource" means to procure goods or services by contract from an outside source or to contract work out, often in order to cut costs.[3] The dictionaries' definitions do not address the issue in this case, namely, the liability of the outsourcing party for the nonperformance of the company to whom the service is outsourced.

The parties presented evidence of the meaning of the word "outsource" in the electronics and computer industry. McAfee's summary judgment evidence included the affidavit of Dr. Richard Blanchard, an expert in the electronics and computer industry. Dr. Blanchard testified about the meaning of "outsourced" in that industry:

> Based upon my experience in and exposure to the industry, I know that the common industry custom, usage, and meaning of the term "outsourcing" is one party—the outsourcing company—contracting with an outside third party to provide or arrange for one or more services or products that the outsourcing company would then provide to its customer(s). With respect to rights, duties, and obligations of the parties, a party that "outsources" part of its contractual duties to a third party nonetheless remains responsible to the purchaser for the work being outsourced.

**3.** *See* http://www.merriam-webster.com/dictionary/outsource ("to procure (as some goods or services needed by a business or organization) under contract with an outside supplier"); http://dictionary.oed.com ("to obtain (goods, a service, etc.) by contract from an outside source; to contract (work) out."); The American Heritage Dictionary of the English Language 1251 (4th ed. 2006) ("To send out (work, for example) to an outside provider or manufacturer in order to cut costs"); *see also* Random House Webster's Unabridged Dictionary 1377 (2nd ed.2001) (defining "outsourcing" as "the buying of parts of a product to be assembled elsewhere, as in purchasing cheap foreign parts rather than manufacturing them at home.").

Agilysys's vice president and corporate counsel, Rita Thomas, testified in her deposition that the word "outsourced" in the Statement of Services and Expectations "means that [Agilysys] does not provide these services and that there is a third party that [Agilysys] is going to get involved here that will contract directly with McAfee to provide those services. That's all it means."

These differing definitions of "outsourced" reveal the presence of an ambiguity in the parties' contract. Under Dr. Blanchard's definition, the Statement of Services and Expectations stated that Agilysys would procure a provider for the warranty services, that the provider with whom it contracted was Barrister, and that Agilysys remained responsible for those services. Under the definition testified to by Rita Thomas, the Statement of Services and Expectations stated that Agilysys did not provide the extended warranty services and that those services would be provided by a third party, Barrister, who would contract directly with McAfee. Under Thomas's definition, Agilysys had no responsibility for the warranty services.

Agilysys also asserted it had no liability because the terms and conditions of the Barrister warranties, which the Statement of Services and Expectations stated McAfee had to agree to, stated Agilysys was "not liable for Services provided by Barrister." The issue in this case is not Agilysys's liability for the warranty services provided by Barrister; instead, the issue is Agilysys's liability for Barrister's failure to provide any warranty services. We conclude this provision does not conclusively establish Agilysys's lack of liability in this case.

We conclude a genuine issue of material fact exists regarding the meaning of the word "outsourced" and Agilysys's liability for Barrister's inability to perform the purchased extended-warranty services. We hold the trial court erred in granting Agilysys's motion for summary judgment on McAfee's breach-of-contract cause of action.

## McAfee's Equitable Causes of Action

■ McAfee also asserted the trial court erred in granting Agilysys's motion for summary judgment on the causes of action for unjust enrichment, money had and received, and promissory estoppel. Unless there is evidence of fraud, bad faith, or illegality, these theories of recovery are not applicable when an express contract governs the subject matter of the dispute. *See Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 636–37 (Tex.App.-Houston [14th Dist.] 2004, pet. abated); *Burlington N. Ry. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex.App.-Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex.1998); *see Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F.Supp.2d 763, 772 (N.D.Ohio 2004) (citing *Ullmann v. May*, 147 Ohio St. 468, 72 N.E.2d 63, 66 (1947)); *Kashif v. Cent. State Univ.*, 133 Ohio App.3d 678, 729 N.E.2d 787, 791–92 (1999). In this case, a contract exists, and it governs whether Agilysys is liable for Barrister's failure to perform extended-warranty services. An ambiguity exists on that issue, but when that is resolved, the terms of the contract will govern the determination. As McAfee has not alleged fraud, bad faith, or illegality in the contract, we conclude the trial court did not err in granting Agilysys's motion for summary judgment on McAfee's causes of action for unjust enrichment, money had and received, and promissory estoppel.

## Breach of Fiduciary Duty

McAfee also alleged Agilysys was liable for the tort of breach of fiduciary duty.

Agilysys asserted in its motion for summary judgment that no fiduciary relationship existed between the parties as a matter of law.

 There are two types of fiduciary relationships: formal fiduciary relationships that arise as a matter of law, such as partnerships and principal-agent relationships, and informal fiduciary relationships or "confidential relationships" that may arise from moral, social, domestic, or personal relationships. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 593–94 (Tex.1992); *see Cairns v. Ohio Sav. Bank*, 109 Ohio App.3d 644, 672 N.E.2d 1058, 1062 (1996). A fiduciary relationship is an extraordinary one and will not be created lightly. *In re Estate of Kuykendall*, 206 S.W.3d 766, 771 (Tex. App.-Texarkana 2006, no pet.). The mere fact that one party to a relationship subjectively trusts the other does not indicate the existence of a fiduciary relationship. *Id.; see also Crim Truck & Tractor Co.*, 823 S.W.2d at 595 ("[M]ere subjective trust alone is not enough to transform arms-length dealing into a fiduciary relationship."). A person is justified in believing another to be his fiduciary "only where he or she is accustomed to being guided by the judgment and advice of the other party, and there exists a long association in a business relationship, as well as a personal friendship." *Pabich v. Kellar*, 71 S.W.3d 500, 505 (Tex.App.-Fort Worth 2002, pet. denied); *see Stone v. Davis*, 66 Ohio St.2d 74, 419 N.E.2d 1094, 1098 (1981) ("A fiduciary relationship ... may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed.").

 McAfee alleged the fiduciary relationship arose because "Agilysys agreed to act as McAfee's agent to ... arrange for Barrister (or some other party) to provide the work required to fulfill Extended Warranties." An agent is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. *Townsend v. Univ. Hosp.-Univ. of Colo.*, 83 S.W.3d 913, 921 (Tex.App.-Texarkana 2002, pet. denied); *see Berge v. Columbus Cmty. Cable Access*, 136 Ohio App.3d 281, 736 N.E.2d 517, 531 (1999). The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist. *Townsend*, 83 S.W.3d at 921; *see Berge*, 736 N.E.2d at 531.

Agilysys asserted the parties agreed in the Systems Integration Purchase Agreement that no agency relationship would exist:

> 17.12 *Relationship of Parties*. The relationship of [Agilysys] and [McAfee] as established under this Agreement shall be and at all times remain one of independent contractors, and neither party shall at any time or in any way represent itself as being an agent or other representative of the other party or as having authority to assume or create obligations or otherwise act in any manner on behalf of the other party.

McAfee argues this provision did not expressly disavow an agency relationship but merely agreed that they would not represent themselves to third parties as agents of each other. However, the provision shows it was the parties' intent that they not be agents for one another. McAfee does not argue and did not come forward with evidence that it was the parties' intent to establish an agency relationship with McAfee having the right to control the details of Agilysys's performance of

the agreement. Accordingly, McAfee has failed to raise a genuine issue of material fact concerning the existence of an agency relationship. We conclude the trial court did not err in granting Agilysys's motion for summary judgment on McAfee's claim of breach of fiduciary duty.

We sustain McAfee's first issue as to its claim for breach of contract and overrule it in all other respects.

## ATTORNEY'S FEES AND COSTS

In its second issue, McAfee asserts the trial court erred in awarding Agilysys $20,000 costs of court and erred in considering awarding Agilysys attorney's fees. Agilysys sought an award of costs and attorney's fees from McAfee's suit for declaratory judgment, which McAfee nonsuited. The trial court held a hearing on whether an award of costs and attorney's fees to Agilysys for defending itself against McAfee's declaratory judgment action would be equitable and just. The court determined "that each side should bear its own attorneys' fees, but that Agilysys should be awarded taxable court costs, which the parties have stipulated to be the amount of $20,000." On appeal, McAfee argues that neither attorney's fees nor costs of court could be awarded under Ohio's declaratory judgment statutes. *See* OHIO REV.CODE ANN. § 2721.16(A)(1)(a).

Under the Texas Declaratory Judgments Act, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 2008). Under the Ohio Declaratory Judgments Act, "the court may make an award of court costs as is equitable and just." OHIO REV.CODE ANN. § 2721.11. However, under Ohio law, "A court of record shall not award attorney's fees to any party on a claim or proceeding for declaratory relief" except in certain situations,

none of which apply in this case. *Id.* § 2721.16(A)(1); *see Gen. Accident Assurance Corp. v. Motorists Mut. Ins. Co.*, 2 Ohio App.2d 234, 207 N.E.2d 670, 671 (1965).

The trial court did not award Agilysys any attorney's fees. Therefore, even if the consideration of awarding attorney's fees was error, it did not probably cause the rendition of an improper judgment or prevent McAfee from properly presenting its case to this Court. Accordingly, the error, if any, in considering awarding Agilysys attorney's fees is not reversible. TEX.R.APP. P. 44.1(a).

McAfee also asserts the trial court erred in awarding Agilysys its costs because "Agilysys has failed to identify any basis in Ohio law for a recovery of court costs." The issue, however, is whether the trial court abused its discretion in awarding Agilysys court costs, not whether Agilysys identified a basis in Ohio law for a recovery of costs. *See Gottlieb & Sons, Inc. v. Hanover Ins. Co.*, No. 64559, 1994 WL 144539, *8 (Ohio Ct.App. Apr. 21, 1994); *Martin v. Lovorn*, 959 S.W.2d 358, 362 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Because both Texas and Ohio's declaratory judgments acts permit a trial court to award costs as are "equitable and just," and McAfee makes no argument on appeal that the award was not equitable and just, we conclude the trial court did not err in awarding Agilysys its costs under the declaratory judgment statutes. We overrule McAfee's second issue.

## CONCLUSION

We reverse the trial court's judgment as to McAfee's breach-of-contract cause of action, and we remand that cause of action to the trial court for further proceedings. In

all other respects, we affirm the trial court's judgment.