**Affirmed in Part and Reversed and Rendered in Part; Opinion Filed May 14, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00029-CV

**OIC HOLDINGS, LLC AND OREGON ICE CREAM, LLC, Appellants**
**V.**
**THOMAS GLEASON AND JULIE GLEASON, Appellees**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-05061-2015**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Nowell

This appeal concerns the denial of a motion for judgment notwithstanding the verdict and the award of attorney's fees to the parties under separate contracts. OIC Holdings, LLC purchased Oregon Ice Cream, LLC from Thomas and Julie Gleason. As part of the purchase, the Gleasons entered into employment agreements with Oregon Ice Cream. After the sale, OIC sued the Gleasons for breach of the Purchase Agreement. The Gleasons filed a third-party claim against Oregon Ice Cream for breach of their employment agreements. The jury failed to find that either the Gleasons or Oregon Ice Cream breached the respective contracts.

Both the Purchase Agreement and the employment contracts provided that the prevailing party in any dispute would be entitled to recover attorney's fees. By agreement, the attorney's fees issues were submitted to the trial court after trial. The trial court determined that the Gleasons

were the prevailing parties under the contract with OIC and that Oregon Ice Cream was the prevailing party under the employment agreements with the Gleasons. The trial court overruled OIC's motion for judgment notwithstanding the verdict, rendered judgment that all parties take nothing on their claims, awarded the Gleasons over $2.2 million in attorney's fees from OIC, and awarded Oregon Ice Cream $200,000 in attorney's fees from the Gleasons.

OIC appeals the denial of its motion for judgment notwithstanding the verdict and the award of attorney's fees to the Gleasons. The Gleasons cross-appeal the award of attorney's fees to Oregon Ice Cream. We conclude that some evidence supports the jury's verdict and the trial court did not abuse its discretion by awarding attorney's fees to the Gleasons. We overrule OIC's issues on appeal. We also conclude that Oregon Ice Cream failed to timely designate an expert witness on attorney's fees pursuant to the trial court's scheduling order. We sustain the Gleasons' issue in their cross-appeal. Accordingly, we reverse that portion of the trial court's judgment awarding attorney's fees to Oregon Ice Cream and render judgment that Oregon Ice Cream take nothing. In all other respects, the trial court's judgment is affirmed.

## BACKGROUND

OIC entered into a Purchase Agreement with Thomas and Julie Gleason to purchase Oregon Ice Cream, LLC for approximately $33 million with adjustments to be determined after closing. As part of the transaction, Oregon Ice Cream entered into employment agreements to retain the Gleasons. Several disputes arose after the closing of the transaction regarding the adjustments under the Purchase Agreement. Eventually, OIC filed this lawsuit against the Gleasons for breach of the purchase agreement and other causes of action. The Gleasons, who had been fired by this time, filed counterclaims against OIC and a third-party claim against Oregon Ice Cream for breach of their employment agreements.

The competing breach of contract claims were submitted to the jury and the jury

determined that the Gleasons did not breach the Purchase Agreement and that Oregon Ice Cream did not breach the employment agreements. OIC moved for judgment notwithstanding the verdict arguing it conclusively proved the Gleasons breached one section of the purchase agreement. The trial court denied the motion.

Pursuant to a stipulation entered into after trial began, the parties moved for awards of attorney's fees and submitted evidence of their fees to the trial court after the jury verdict. The trial court concluded that the Gleasons were the prevailing parties under the purchase agreement and awarded them over $2.2 million in attorney's fees. The court also determined that Oregon Ice Cream was the prevailing party under the employment agreements and awarded it $200,000 in attorney's fees. The trial court rendered final judgment that OIC and the Gleasons take nothing on their claims and that the Gleasons and Oregon Ice Cream recover their attorney's fees as found by the court.

On appeal, OIC contends the trial court erred by denying its motion for judgment notwithstanding the verdict (JNOV), by determining that the Gleasons were the prevailing parties under the Purchase Agreement, and by improperly conditioning the award of appellate fees for presentation of a response to a petition for review. The Gleasons cross-appeal complaining the trial court erred by awarding attorney's fees to Oregon Ice Cream because it did not timely disclose an expert witness as required by the trial court's scheduling order.

DISCUSSION

**A. JNOV**

We review a trial court's decision to grant or deny a motion for JNOV under the legal sufficiency standard of review. *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cty., Inc.*, 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pets. denied); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (test for legal sufficiency is same for directed verdict,

JNOV, and appellate no-evidence review). We credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). We will uphold the jury's finding if it is supported by more than a scintilla of competent evidence. *Id*.

A party challenging the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof at trial must demonstrate that the evidence conclusively established all vital facts in support of the issue as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The appellant must show there is no evidence to support the jury's finding and that the evidence conclusively establishes the opposite finding. *Id*. The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827.

The jury refused to find that the Gleasons "fail[ed] to comply with Section 2.2 of the Purchase Agreement." OIC argues there is no evidence to support this adverse finding and that the evidence conclusively establishes that the Gleasons breached Section 2.2(a).[1] In particular, OIC claims the Gleasons issued approximately $507,000 in company checks prior to closing, but did not include those outstanding checks in the calculations for the purchase price.

Section 2.2 of the Purchase Agreement provides:

2.2 Purchase Price and Pre-Closing Transactions.

(a) <u>Purchase Price</u>. The purchase price for the Transferred Equity Interests is $33,000,000, *less* the outstanding amount of the Permitted Indebtedness at the Closing Date, *less* the Excess JG Separation Obligation, *plus* or minus the Adjustment Amount (the "*Purchase Price*")*.* At the Closing, Buyer shall deliver as payment on account of the Purchase Price an amount (the "*Closing Payment*") equal to (i) the Purchase Price *plus* (ii) Cash (after taking into account the payments to be made pursuant to <u>Section 2.2(b)(i)</u> below) *less* (iii) Indebtedness, if any, excluding Permitted Indebtedness and the Indebtedness satisfied pursuant to Section 2.2(b)(i) below. The Adjustment Amount shall be paid by Sellers or Buyer,

---

[1] The jury also found that the Gleasons did not breach the representations and warranties article of the Purchase Agreement and did not commit fraud or statutory fraud. OIC does not challenge these findings on appeal.

as the case may be, in accordance with Section 2.5.

Cash is defined in the Purchase Agreement as:

"Cash" means the sum of all cash and cash equivalents of the Acquired Companies, *less* the aggregate amount of all checks issued by any Acquired Company to a third party that have not yet cleared, *plus* the aggregate amount of all checks issued to any Acquired Company that have been deposited in an Acquired Company's bank account but that have not yet cleared.

The first sentence of Section 2.2(a) defines the Purchase Price. Cash is not included in the definition of the Purchase Price. The second sentence requires OIC to deliver at closing an amount equal to (i) the Purchase Price, plus (ii) Cash, less (iii) Indebtedness excluding Permitted Indebtedness and the indebtedness satisfied pursuant to another section. The Purchase Agreement does not expressly require either party to calculate Cash, it merely defines that term and uses it in calculating the amount OIC was required to deliver at closing.

Before entering into the Purchase Agreement, OIC obtained financial information from the Gleasons and hired the firm of Duff & Phelps (D&P) to conduct accounting due diligence for the transaction. Negotiations began in February 2014 and continued through the execution of the Purchase Agreement on September 25, 2014 and the closing of the sale on October 1, 2014. D&P worked with the Gleasons and the company's outside auditors in reviewing financial information about the company, including audited financial statements. D&P noted in its report to OIC that the company reported $0 cash at December 31, 2013 and April 30, 2014 as all cash receipts directly offset the line of credit. D&P also noted that outstanding checks should be treated as debt-like items because the company settled the liability with its line of credit.

Tom Gleason explained to the jury that the company did not operate on cash, but used a revolving line of credit to pay its bills. The company's balance sheets, which were disclosed to OIC, showed the company's monthly cash balance was zero and the company's outstanding checks as a separate line item. He said the business's expenses were booked as accounts payable. When

–5–

checks were issued for payment, the amounts were moved from accounts payable and the checks recorded as open checks. The Gleasons' accounting expert testified that the company followed proper accounting practices by recording the outstanding checks as liabilities on its balance sheets. The expert disagreed with OIC's damage expert that outstanding checks should have been recorded as negative cash on the company's balance sheet.

The record contains evidence that the Gleasons disclosed to OIC that the company would issue several checks shortly before closing. According to Tom Gleason, after signing the Purchase Agreement on September 25, 2014 and before the closing on October 1, 2014, he contacted OIC's representative, Robert DesMarais, about whether to issue around $2 million in checks to pay accounts payable or to wait until after closing. Gleason also asked if sending the checks would affect the company's working capital. DesMarais responded that issuing the checks would not affect working capital and to do business as usual. The company then issued the checks in the ordinary course of business.

At closing, all parties signed a Flow of Funds Memorandum. According to Gleason, the memorandum was prepared by OIC. The Flow of Funds Memorandum set forth the payments to be made in connection with the closing of the transaction, including the calculation of the purchase price and the closing payment as specified in the Purchase Agreement. OIC contends the Flow of Funds Memorandum, which showed Cash as $0.00, is evidence the Gleasons breached Section 2.2 of the Purchase Agreement.

The Flow of Funds Memorandum provides:

All parties acknowledge and agree that the amounts and calculations pursuant to the disbursement of funds are and have been made in accordance with the terms of the Purchase Agreement, as applicable.

The undersigned have reviewed the above described payments and hereby confirm, acknowledge and agree to the contents of this Memorandum.

It is signed by both OIC and the Gleasons. Thus, the jury was presented with evidence that all

–6–

parties agreed that the Flow of Funds Memorandum was calculated in accordance with the terms of the Purchase Agreement and those parties agreed to the amounts and calculations in the Flow of Funds Memorandum, which showed Cash as $0.00.

Crediting evidence favoring the verdict if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not, we conclude the evidence at trial "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. Accordingly, some evidence supports the jury's finding that the Gleasons did not breach Section 2.2 of the Purchase Agreement. Therefore, the trial court did not err by denying the motion for JNOV. We overrule OIC's first issue.

**B. Attorney's Fees under the Purchase Agreement**

In its second issue, OIC contends the trial court erred by awarding attorney's fees to the Gleasons. OIC argues that neither party prevailed under the Purchase Agreement because the trial court rendered a take nothing judgment on OIC's claims and a partial summary judgment denying the Gleasons' counterclaims.[2] The attorney's fees section of the Purchase Agreement provides:

> In the event any Proceeding (except mediation) is brought in respect of this Agreement or any of the documents referred to in this Agreement, the prevailing party will be entitled to recover reasonable attorneys' fees and other costs incurred in such Proceeding, in addition to any relief to which such party may be entitled.

The parties agreed that the Purchase Agreement would be governed by, interpreted, and enforced in accordance with Delaware law. Therefore, we will look to Delaware law for substantive issues regarding attorney's fees, while Texas law will apply to procedural issues. *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 824 (Tex. App.—Dallas 2010, no pet.) ("In applying a contractual choice-of-law provision, Texas courts apply the substantive law of the

---

[2] The Gleasons filed third-party claims against several individuals and entities related to OIC. They asserted common law fraud, aiding and abetting, and conspiracy claims against third-party defendants and OIC and a claim for contractual indemnity for OIC's alleged fraud. They alleged that OIC failed to disclose and misrepresented its true intention when entering into the Purchase Agreement. These claims were dismissed in a partial summary judgment for OIC and the third parties.

choice-of-law provision but apply Texas law to matters of remedy and procedure.").

The "prevailing party" under Delaware law is the party that predominates in the litigation. *Comrie v. Enterasys Networks, Inc.*, CIV.A.19254, 2004 WL 936505, at \*2 (Del. Ch. Apr. 27, 2004). Courts evaluate "the substance of a litigation to determine which party predominated." *Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*, 2009 WL 1111179, at \*14 (Del.Ch. Apr.27, 2009); *W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2009 WL 458779, at \*8 (Del.Ch. Feb.23, 2009); *Brandin v. Gottlieb*, 2000 WL 1005954, at \*28 (Del.Ch. July 13, 2000). Thus, "in the usual case, whether a party prevailed is determined by reference to substantive issues, not damages." *W. Willow-Bay*, 2009 WL 458779, at \*9. Delaware law applies contractual provisions allowing the prevailing party to recover attorney's fees on an all-or-nothing basis rather than a claim-by-claim basis. *Id*.

Pursuant to a stipulation between the parties, the trial court decided all issues regarding attorney's fees after the jury's verdict. The trial court determined that "in the primary lawsuit, the purchase agreement for the Ice Cream Company, that the Gleasons are the prevailing party. They predominated in the litigation."

OIC argues the Gleasons cannot be prevailing parties because they merely defeated OIC's claims. It asserts that if OIC and the Gleasons had intended the term "prevailing party" to mean a party who avoids the other party's requested relief they would have used additional language such as that quoted in opinions from New York and California. *See Getty Petroleum Corp. v. DeIorio*, 194 A.D.2d 762, 764, 599 N.Y.S.2d 829 (1993) (contract allowing attorney's fees for "enforcing any of the remedies described above or in defending any claim brought against [Lessor] by Lessee against which [Lessor] successfully defends"); *Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc.*, 158 Cal. App. 4th 479, 484–85 (2007) (contract defining prevailing party as one "who substantially obtains or defeats" relief sought by the other party).

We reject OIC's argument that the Purchase Agreement does not include a successful defendant in the term "prevailing party." First, the authorities cited were not decided under Delaware law and second, they do not stand for the broad principle that additional language is required for a successful defendant to be considered a prevailing party. Delaware courts allow a successful defendant to recover attorney's fees under a contract provision that merely refers to the "prevailing party." *See Sparton Corp. v. O'Neil*, CV 12403-VCMR, 2018 WL 3025470, at \*5 (Del. Ch. June 18, 2018) (provision that "the prevailing party shall be entitled to recover from the non-prevailing party" attorney's fees required plaintiff to pay defendant's attorney's fees related to their successful defense against indemnity and fraud claims); *see also W. Willow-Bay Court*, 2009 WL 458779, at \*8.

OIC next argues that no one prevails if the parties battle to a draw, citing *Mrs. Fields Brand, Inc. v. Interbake Foods LLC*, CV 12201-CB, 2018 WL 300454, at \*2–3 (Del. Ch. Jan. 5, 2018). But the decision in *Mrs. Fields* did not establish an absolute rule; it merely reflects one court's conclusion based on the specific facts in that case. The *Mrs. Fields* court identified two core issues in the litigation and determined that each party prevailed on one of those issues. *Id*. at \*3. Here, there was only one core issue, whether the Gleasons breached the terms of the Purchase Agreement, and the trial court, based on the evidence and the jury findings, concluded that the Gleasons prevailed on that core issue. Although OIC argues it prevailed on the Gleasons's claims for fraud, aiding and abetting, conspiracy, disgorgement, and contractual indemnity, those claims were merely offsetting in nature and did not constitute distinct core issues. Further, this litigation resulted in the release of approximately $1.6 million dollars to the Gleasons, which had been held in escrow under the terms of the Purchase Agreement. Having obtained vindication of their right to receive those funds, the Gleasons obtained more than a draw.

We conclude the trial court correctly determined that the Gleasons prevailed on the

predominate or core issue in the case and they are the prevailing parties under the terms of the Purchase Agreement. Under the express terms of that agreement, the Gleasons are entitled to recover their reasonable attorney's fees. We overrule OIC's second issue.

In its third issue, OIC contends the award of appellate attorney's fees is not properly conditioned on the filing of a substantive response to a petition for review in the supreme court. This issue was raised in OIC's motion to modify the judgment, which the trial court denied.

The judgment includes an award of attorney's fees in the event of an appeal to the supreme court as follows:

> in the event of an appeal to the Texas Supreme Court, Defendants Tom Gleason and Julie Gleason shall have and recover, contingent upon their success, additional attorney's fees recoverable against Plaintiff OIC Holdings, LLC, in the amounts of $100,000.00 for a petition for review or response, $150,000.00 for briefing on the merits, and $100,000.00 for preparation and presentation of oral argument (if granted)[.]

OIC contends this language allows the Gleasons to recover an additional $100,000 for merely filing a waiver of a response to a petition for review. We disagree. An appeal to the supreme court is initiated by the filing of a petition for review. TEX. R. APP. P. 53.1. Any party seeking to alter the court of appeals' judgment must file a petition for review. *Id.* Any other party to the appeal may file a response to the petition for review, but it is not mandatory. TEX. R. APP. P. 53.3. The supreme court will consider the petition without a response if no response is timely filed or a party files a waiver of response. *Id.*

The judgment awards appellate attorney's fees contingent upon the Gleasons' success on a petition for review. The Gleasons concede that the judgment allows an additional award only for filing a response to a petition for review, not a waiver of a response. We agree; a waiver of a response is not a response. The text of Rule 53.3 makes this clear. The supreme court will consider the petition "without a response" if the opposing party files a waiver of response. TEX. R. APP. P. 53.3. The judgment does not award additional fees for filing a waiver of a response to a petition

–10–

for review.  We overrule OIC's third issue.

### C.  Cross-Appeal: Attorney's Fees under the Employment Agreements

In their cross-appeal, the Gleasons contend the trial court erred by awarding attorney's fees to Oregon Ice Cream because Oregon Ice Cream did not plead for attorney's fees and did not timely designate an expert witness on attorney's fees.

The employment agreements between the Gleasons and Oregon Ice Cream contain the following attorney's fees provision:

> 5.10. Costs and Attorneys' Fees. In the event suit or action is instituted to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover from the other party such sums as the court may adjudge as reasonable attorneys' fees at trial or on appeal of such suit or action, in addition to all other sums provided by law.

The employment agreements include a Washington choice of law provision; however, because the issues before us involve procedural matters, we apply Texas law.  *See McAfee, Inc.*, 316 S.W.3d at 824.

After the jury's verdict, Oregon Ice Cream filed a motion to recover its attorney's fees for defending the Gleasons' claim for breach of the employment agreements.  Oregon Ice Cream offered the declaration of Greg Curry as an expert witness in support of its claim for attorney's fees.[3]  The Gleasons objected to the motion and declaration because Oregon Ice Cream did not disclose an expert on its attorney's fees by the deadline set in the scheduling order.  The trial court denied the Gleasons' objection.  The Gleasons argue on appeal that the evidence must be excluded under Rule 193.6 and, without it, there is no evidence to support the award of attorney's fees to Oregon Ice Cream.

The trial court signed an agreed scheduling order on August 2, 2016, which set deadlines

---

[3] Curry had been designated as an expert by OIC to testify as to OIC's attorney's fees incurred for prosecuting its claims against the Gleasons and the defense of the claims and counterclaims brought by the Gleasons.

–11–

for designation of experts:

> 7. Deadline for Designations of Experts: The party with the burden of proof on a claim or defense shall file a designation of its testifying experts by SEPTEMBER 12, 2016. The party without the burden of proof on a claim or defense shall file a designation of its testifying experts by OCTOBER 11, 2016. Notwithstanding the foregoing, the deadlines in this subparagraph 7 are without prejudice to the parties' respective positions on how any request for the recovery of attorneys' fees will be handled.

Oregon Ice Cream argues the qualifying language in the last sentence of this paragraph granted the trial court discretion to conclude either that Oregon Ice Cream was not required to designate an expert on attorney's fees or, if required to designate, the ambiguous language warrants a finding that Oregon Ice Cream should not be sanctioned with exclusion of its expert. We disagree. The last sentence of paragraph seven did not modify or eliminate the deadlines for designation of experts on attorney's fees. The deadlines remained in place, but the language indicates that complying with the deadline would not prejudice a parties' position on how requests for attorney's fees would be handled.[4] Had the parties agreed that the deadlines did not apply to attorney's fees experts, they would have said so with words similar to "excluding experts on attorney's fees." They did not. Thus, the scheduling order required Oregon Ice Cream to file a designation of its testifying experts.

Oregon Ice Cream did not file a designation of an expert on its attorney's fees. It contends, however, that the expert report filed on behalf of OIC was sufficient to meet the disclosure requirement. We disagree. On September 12, 2016, OIC served a disclosure identifying Greg Curry as an expert on OIC's attorney's fees along with Curry's expert report. The disclosure stated that Curry was expected to testify on "the reasonableness of attorney's fees incurred by Plaintiff in connection with its prosecution and defense of claims in this lawsuit and in the prior Washington

---

[4] At the time the order was entered there was an unresolved dispute about whether the jury or the trial court should decide the amount of reasonable attorney's fees.

–12–

proceeding." Curry stated in his expert report that he was retained by the attorneys for OIC to opine "as to the reasonableness, and to the extent required necessity, of the attorney's fees incurred by OIC in connection the prosecution of the claims asserted by OIC against" the Gleasons. In a footnote to the word "prosecution," the report stated: "Also, to the extent necessary, the defense of the claims and counterclaims brought by Defendants." Curry stated his opinion that the legal services rendered by plaintiff's attorneys "on behalf of OIC" were necessary to the "prosecution of OIC's claims, and the defense of the claims and counterclaims asserted by Defendants." He further opined that the fees and costs charged by OIC's attorneys were reasonable. Curry expressed no opinion regarding the reasonableness or necessity of any legal services rendered on behalf of Oregon Ice Cream. We conclude that Curry's expert report is insufficient to designate him as an expert for Oregon Ice Cream's reasonable and necessary attorney's fees.

Rule 193.6 requires the exclusion of evidence and witnesses that are not timely disclosed in response to discovery requests. TEX. R. CIV. P. 193.6(a). Rule 193.6 applies to disclosures required by scheduling orders. *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 882 (Tex. 2009) (per curiam) (affirming exclusion of expert witness not timely disclosed pursuant to deadline provided in scheduling order). The Rule "is mandatory, and the penalty—exclusion of evidence—is automatic, absent a showing of: (1) good cause or (2) lack of unfair surprise or (3) unfair prejudice." *Lopez v. La Madeleine of Tex., Inc.*, 200 S.W.3d 854, 860 (Tex. App.—Dallas 2006, no pet.). "The sanction of automatic exclusion of undisclosed evidence, subject to the exceptions set forth in the rule, is well established. The party offering the undisclosed evidence has the burden to establish good cause or lack of surprise, which must be supported by the record." *Id.* (citations omitted).

The good cause exception "allows a trial judge to excuse a party's failure to comply with discovery obligations in difficult or impossible circumstances." *PopCap Games, Inc. v.*

*MumboJumbo, LLC*, 350 S.W.3d 699, 718 (Tex. App.—Dallas 2011, pet. denied). Inadvertence, lack of surprise, or the uniqueness of the offered evidence do not constitute good cause. *Id*. Oregon Ice Cream presented no evidence that it would have been difficult or impossible for it to timely designate Curry as an expert on its attorney's fees for defending the employment contract claims. Nor does Oregon Ice Cream argue on appeal that there is evidence of good cause in the record.

Likewise, Oregon Ice Cream offered no evidence of the lack of unfair surprise or unfair prejudice. The trial court ruled before trial that the reasonableness and necessity of attorney's fees would be submitted to the jury. It was not until after trial began that the parties stipulated to submit all attorney's fees issues to the trial judge after the jury's verdict. The Gleasons made that agreement in light of the pleadings and designations of experts at that time. Given that OIC and the Gleasons timely designated their expert witnesses and Oregon Ice Cream did not, the Gleasons were entitled to prepare for trial with the assurance that Oregon Ice Cream would not call an undesignated expert on its own behalf. *Alvarado v. Farah Manf'g Co.*, 830 S.W.2d 911, 915 (Tex. 1992) ("A party is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her in response to a proper interrogatory."). The mere fact that an expert would be required to support a claim for attorney's fees, and thus should have been anticipated by the Gleasons, is insufficient to show the lack of unfair surprise or prejudice. *Lopez*, 200 S.W.3d at 863; *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 272 (Tex. App.—Austin 2002, pet. denied) (fact that expert is necessary to prove a claim does not establish that opponent is not unfairly surprised or prejudiced by late designation).

The trial court did not expressly state a reason for overruling the objection to Oregon Ice Cream's expert, but we conclude the record does not support an implied finding of good cause or the lack of unfair surprise or prejudice. *See Lopez*, 200 S.W.3d at 863. Therefore, the trial court

–14–

abused its discretion by admitting the evidence. The court should have sustained the objection and excluded the expert affidavit as required by Rule 193.6. Because Oregon Ice Cream had the burden to prove its claim for attorney's fees and the only evidence supporting those attorney's fees should have been excluded, there is no evidence to support the award of fees to Oregon Ice Cream. We sustain the Gleasons' issue on their cross-appeal, reverse the award of attorney's fees to Oregon Ice Cream, and render judgment that Oregon Ice Cream take nothing on its claim for attorney's fees.

## CONCLUSION

We conclude there is evidence to support the jury's verdict on the breach of contract claim and the trial court correctly denied the JNOV. We further conclude the trial court did not err by awarding attorney's fees through trial and conditional fees for successful appeals to the Gleasons under the Purchase Agreement. Finally, we conclude that Oregon Ice Cream did not timely disclose an expert witness on attorney's fees, did not show good cause or the lack of unfair surprise or prejudice for the failure to disclose, and the trial court abused its discretion by admitting evidence of Oregon Ice Cream's attorney's fees. Accordingly, we reverse that portion of the trial court's judgment awarding attorney's fees to Oregon Ice Cream and render judgment that Oregon Ice Cream take nothing on its claim for attorney's fees. In all other respects, we affirm the trial court's judgment.


/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

180029F.P05

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

OIC HOLDINGS, LLC AND OREGON
ICE CREAM, LLC, Appellants

No. 05-18-00029-CV          V.

THOMAS GLEASON AND JULIE
GLEASON, Appellees

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-05061-2015.
Opinion delivered by Justice Nowell.
Justices Myers and Osborne participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding attorney's fees to Oregon Ice Cream, LLC and **RENDER** judgment that Oregon Ice Cream, LLC take nothing on its claim for attorney's fees. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 14th day of May, 2019.